# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WATERS CORPORATION AND WATERS TECHNOLOGIES CORPORATION,<br><br>                  Plaintiffs,<br><br>    v.<br><br>AGILENT TECHNOLOGIES INC.,<br><br>                  Defendant. | Civil Action No. 18-1450-MN |

## PLAINTIFFS' OPENING LETTER TO THE HONORABLE MARYELLEN NOREIKA REGARDING DISCOVERY DISPUTES

*Of Counsel:*

Matthew M. Wolf
Jennifer A. Sklenar*
David McMullen, Ph.D.
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000

Jeffrey A. Miller
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
5 Palo Alto Square, Suite 500
Palo Alto, CA 94306
Telephone: (650) 319-4500

Victoria L. Reines
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-7228

*Admitted in NY and CA only; practice limited to matters before federal courts and federal agencies

Karen L. Pascale (#2903)
Robert M. Vrana (#5666)
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
kpascale@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiffs*

June 27, 2019

Dear Judge Noreika:

    Plaintiffs (collectively, "Waters") submit this letter in advance of the teleconference scheduled for 2:00 pm EDT on July 3, 2019, regarding discovery disputes with defendant Agilent.

## I. Pre-Acquisition ProZyme Documents (RFP Nos. 1-41, 43-44, 46-50, 52-54, 63, 65, 70-73, 75)

    Waters seeks documents created prior to Agilent's acquisition of ProZyme, Inc. ("ProZyme") that are responsive to numerous document requests. In 2016, ProZyme launched the infringing InstantPC products ("the Accused Products"). D.I. 8 at 5. On June 28, 2018, Agilent announced that it intended to acquire ProZyme. *Id.* Agilent completed its acquisition of ProZyme on August 1, 2018 (*id.*), which caused ProZyme to become a wholly-owned subsidiary of Agilent. D.I. 34, Ex. 1 at 26. Agilent indicated that it would begin selling ProZyme's products upon completion of the acquisition (D.I. 8 at 5), and that the financial results of ProZyme would be included within the financial results of Agilent. D.I. 34, Ex. 1 at 26. Waters is entitled to responsive pre-acquisition documents, including documents in the possession, custody or control of Agilent's wholly-owned subsidiary and operating entity ProZyme, because they are relevant to this case at least: (i) to show the claimed features of the Accused Products; (ii) to show willful infringement; (iii) to identify secondary considerations of non-obviousness (e.g., copying); (iv) to establish Agilent's inducement liability prior to the acquisition; (v) to perform valuation of the accused product line; and (vi) to conduct a reasonable royalty analysis. *See, e.g.*, *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) ("The key element in setting a reasonable royalty … is the necessity for return to the date when the infringement began.") (internal quotation marks omitted); *3Com Corp. v. D-Link Sys., Inc.*, C.A. No. 03-2177-VRW, 2007 WL 949596, at *4 (N.D. Cal. Mar. 27, 2007) ("[Defendant] cannot dispose of its discovery obligations on its own by unilaterally calculating the time period to which it believes plaintiff is entitled to recover damages.").

    Although Agilent *is* willing to collect and produce post-acquisition documents from ProZyme,[1] it objects to these requests, *inter alia*, because they are "not limited to alleged infringing activities in the United States market and purport[] to require the production of documents relating to conduct or events prior to Agilent's acquisition of ProZyme." *See, e.g.*, Ex. A at 7; *see also id.* at 3. Agilent's position—that it need not produce responsive pre-acquisition documents—is meritless. According to Agilent, because there is a pending case in California, this case is limited to events occurring *after* Agilent's acquisition of ProZyme. Agilent has, therefore, stated that it will not produce pre-acquisition documents, unless it plans to rely on them.

    *First*, the California case against ProZyme is stayed pending the outcome of the present action (*see* D.I. 41; *ProZyme, Inc. v. Waters Corp. et al.*, 3-18-6415-EMC (N.D. Cal.), D.I. 41), so ProZyme has produced no documents there. Moreover, because ProZyme is Agilent's wholly owned and operated subsidiary, complete relief should be available in this case. Indeed, Agilent

---

[1] Notably, however, Agilent is *not* willing to search for post-acquisition ProZyme documents related to patent monitoring policies (*i.e.*, in response to RFP No. 70). *See* Ex. B at 1.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Honorable Maryellen Noreika
June 27, 2019
Page 2

offered to dismiss the California case because it believed the entire dispute could be resolved in Delaware. Ex. C at 3-5. But now, through discovery objections, Agilent seeks to complicate the dispute it previously said it was simplifying and require litigation in two forums.

*Second*, Agilent cannot withhold responsive documents but then decide to produce the ones it wants to rely on. This is analogous to privilege disputes, where a party produces some documents (in this case, pre-acquisition documents) to use as a sword, while simultaneously shielding others under the (incorrect) guise that they are irrelevant. *See, e.g.*, *In re Intel Corp. Microprocessor Antitrust Litig.*, 258 F.R.D. 280, 292 (D. Del. June 4, 2008).

As an example, RFP No. 9 requests "manufacturing instructions and protocols for the Accused Products." Ex. A at 12. Such documents are plainly relevant to the issues in this case, and Agilent does not suggest otherwise. Yet, Agilent is only willing to produce documents *after* its acquisition of ProZyme in response to this request. Ex. D at 1. The same is true for RFP No. 12, which seeks "marketing material relating to InstantPC." Ex. A at 14; *see* Ex. E at 2.

Relatedly, Agilent is unwilling to search for and produce conception, design, and development documents (*See* RFP 8 at Ex. A at 12) because they predate the filing of the continuation application that issued as the patent-in-suit since "ProZyme launched InstantPC$^{TM}$" before Waters filed the application that issued as the '234 patent. Ex. E at 1. However, this Court has held that these types of documents are relevant regardless of when the damages period begins. *See Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp*., C.A. No. 13-2072-SLR-SRF, 2015 WL 4966957 (D. Del. Aug. 20, 2015). In *Parallel*, the Court held that "the pre-2012 [*i.e.*, pre-issuance] discovery is relevant regardless of when the damages period starts" because "pre-2012 design documents for the accused features and technical specifications are relevant [since Defendant] continues to support its customers' use of products sold prior to 2012 and post-2012 products were the result of research, design, and development during the years prior to 2012." *Id.* at *3. Notably, the pre-2012 discovery was *not* limited to *after* the filing of the patent. Here, as in *Parallel*, the pre-filing discovery that Waters seeks is relevant because Agilent's use and sale (*i.e.*, infringement) of the Accused Products is "the result of research, design, and development during the years prior to" the filing of the application that issued as the '234 Patent. *Id.*

II. **Corporate Formation, Structure and Formalities of Agilent and ProZyme (RFP Nos. 47-50, 52-55, 62)**

Waters seeks documents related to the corporate formation, structure and formalities of ProZyme to establish Agilent's liability for ProZyme's infringement. Agilent objects, *inter alia*, to the extent the RFPs "seek[] information not relevant to any claim or defense in this action, particularly information related to ProZyme and its activities not related to any Accused Product." Ex. A at 39-40; *see also* Ex. E at 3. Agilent's objection is inconsistent with its stated rationale for requesting that the California case be dismissed. Ex. C at 3-5. Moreover, Waters' Complaint contains allegations that (i) ProZyme launched the Accused Products in 2015 (D.I. 1, ¶ 18), (ii) Agilent acquired ProZyme on August 1, 2018 (*id.*, ¶ 20) and Agilent indicated it would begin selling the Accused Products after the acquisition. *Id.*, ¶ 21. Waters further alleged that

Young Conaway Stargatt & Taylor, LLP
Honorable Maryellen Noreika
June 27, 2019
Page 3

Agilent's "infringement is and/or will be willful" because "prior to the completion of Agilent's acquisition of ProZyme, a representative of Waters informed Agilent in-house patent counsel that Waters was aware of Agilent's plans to acquire ProZyme and that Waters had an exclusive license to the '234 Patent." *Id.*, ¶ 31. Additionally, in its answering brief in opposition to Agilent's motion to dismiss, Waters stated that "Agilent may also be held liable for ProZyme's direct sales of InstantPC" pursuant to agency theory. D.I. 33 at n.2.[2] Moreover, in acquiring ProZyme, Agilent almost certainly took on ProZyme's liabilities, and regardless, Waters should be able to get this discovery so it can challenge any assertion by Agilent to the contrary.

### III. Instruments Used With the Accused Products (RFP Nos. 22, 24-28, 30)

Waters seeks documents related to instruments sold with or for use with the Accused Products. Agilent objects to these requests as "improperly t[ying] the sale of instruments with the accused product." *See, e.g.*, Ex. A at 10. But "[c]ourts have granted motions to compel discovery requests extending to unaccused products where the plaintiff had asserted a derivative or convoyed sales theory of damages . . . ." *Invensas Corp. v. Renesas Elecs. Corp.*, C.A. No. 11-448-GMS-CJB, 2013 WL 12146531, at *3 (D. Del. May 8, 2013); *Infinity Computer Prods., Inc. v. Epson Am., Inc.*, C.A. No. 18-02532-RGK-RAOx, 2018 WL 7890859, at *2 (C.D. Cal. Dec. 14, 2018) (granting motion to compel discovery related to non-accused products because such information may be relevant to reasonable royalty analysis); *Positive Techs., Inc. v. Sony Elecs., Inc.*, C.A. No. 11-2226-SI-KAW, 2013 WL 707914, at *2, 6 (N.D. Cal. Feb. 26, 2013) (same); *Barnes & Noble, Inc. v. LSI Corp.*, C.A. No. 11-02709-EMC-LB, 2013 WL 131073, at *1-2 (N.D. Cal. Jan. 9, 2013) (granting discovery of non-accused device sales where there is no burden to producing party). Contrary to Agilent's assertion, Waters has sufficiently articulated "how the documents regarding unaccused products relate to a theory of convoyed sales" (Ex. E at 3), at the preliminary injunction hearing (Ex. F at 31:11-32:21) and in its Initial Damages Model. *See* Ex. G at 3.

Respectfully submitted,

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)

Exhibits A -G
cc:  Clerk of Court (two courtesy copies by hand, with exhibits)
     Counsel of Record (by email, with exhibits)

---

[2] To the extent Agilent asserts that Waters did not plead agency, these pleadings demonstrate that Waters in fact did so. "[E]vidence of agency required at the pleading stage is minimal." *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *6 (D. Del. Mar. 7, 2017); *see Ninespot, Inc. v. Jupai Holdings Ltd.*, C.A. No. 18-00144-RGA, 2019 WL 1650065, at *4 (D. Del. Apr. 17, 2019) ("In the Third Circuit, Rule 8 sets a low bar for pleading an agency relationship . . . . because 'discovery is necessary when an agency relationship is alleged' . . . ."). If the Court finds that Waters did not sufficiently allege an agency relationship, Waters will file a Motion for Leave to Amend the Complaint.