# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WATERS CORPORATION AND WATERS TECHNOLOGIES CORPORATION, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) )   C.A. No. 18-1450-MN ) |
| AGILENT TECHNOLOGIES INC., | ) ) |
| Defendant. | ) |

## DEFENDANT AGILENT TECHNOLOGIES INC.'S RESPONSIVE LETTER TO THE HONORABLE MARYELLEN NOREIKA REGARDING DISCOVERY DISPUTES

OF COUNSEL:

Anne Elise Herold Li
James K. Stronski
Robert B. Kornweiss
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

Chiemi Suzuki
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
(213) 622-4750

Chad M. Shandler (#3796)
Travis S. Hunter (#5350)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER L.P.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Shandler@rlf.com
Hunter@rlf.com
Ewing@rlf.com

*Attorneys for Defendant Agilent Technologies Inc.*

Dated:  June 28, 2019

Dear Judge Noreika:

Waters' entire letter relates to discovery about two things: (1) a company that was not sued in this case; and (2) products that are not accused of infringement in this case. This effort to ignore boundaries between cases, companies, and products to expand discovery is especially conspicuous given that Waters fails to link the information it seeks with the issues and the facts *in this case*. This discovery is not only irrelevant, but it is also overly burdensome because it seeks copious amounts of documents for meritless legal theories. This should not be allowed.

**I. ProZyme-Only Discovery Should be Taken in California, Not Here.**

Waters made an affirmative decision to file this case against Agilent only in this Court, while it pursued separate infringement claims against ProZyme in the Northern District of California. Waters should be required to pursue discovery for each dispute in the forum where it is being litigated, and should not be permitted to impose the burden of ProZyme-only discovery on Agilent in this case. *Wyeth v. Impax Labs., Inc.,* 248 F.R.D. 169, 71 (D. Del. 2006) (denying motion to compel in part where the documents sought related to another litigation and were not critical to resolving the issues in the case); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) (affirming the propriety of the court requiring plaintiff to enforce patent rights in the proper forum); *Perryman v. Litton Loan Servicing, LP*, 81 F. Supp. 3d 893, 901 (N.D. Cal. 2015) (noting lack of authority for plaintiff's "remarkable proposition that a party may propound discovery in one pending class action for the purpose of using it in another").

Despite the existence of two distinct cases against two distinct parties, Waters asserts that "complete relief" should be available in this case. Waters cites no authority, or even any reason, for this statement. As Waters acknowledges, it has not adequately pled any "agency theory" to support a claim for such discovery. D.I. 80, at 4. The discovery should therefore be denied. *Mobil Oil Corp.*, 718 F. Supp. at 270 ("Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form bears the burden of proving that there are substantial reasons for doing so."); *Ethypharm S.A. France v. Bentley Pharm., Inc*., 388 F. Supp. 2d 426, 432 (D. Del. 2005) (agency relationship does not exist simply because of a parent-subsidiary relationship); *Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc*., No. CIV.A. 01-5627, 2002 WL 31834833, at *2 (E.D. Pa. Dec. 18, 2002) (presumption against holding parent liable for subsidiary's torts "applies to direct patent infringement under § 271(a), just as it would to any other tort").

**II. Pre-Acquisition ProZyme Documents Are Also Not Relevant or Proportional.**

Waters also fails to show any entitlement to discovery of ProZyme documents from before it was acquired by Agilent, whether on an agency theory or otherwise. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) ("the Oklahoma corporation could not have acted as the Delaware corporation's agent in infringing [] patents" because "[t]he Oklahoma corporation began making and selling the accused [product]" before its relationship with the Delaware company began); *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596 (Fed. Cir. 1988) (rejecting the plaintiff's argument that a parent was liable for the pre-merger infringement liability of its subsidiary because of corporate/successor liability where the plaintiff "point[ed] to no evidence that [the parent] [was] a successor in interest to [its subsidiary] or ha[d]

assumed any liability [its subsidiary] might have for [subsidiary's] patent infringement" and explaining that the mere fact that a parent acquired the subsidiary's stock is not sufficient evidence to support corporate successor liability.).

Waters offers six topics to which it claims pre-acquisition ProZyme documents could be relevant, but each clump of this mud-at-the-wall approach is meritless: (i) the claimed features of the accused product requires no discovery beyond Agilent's documents and the already-produced core technical documents; (ii) a subsidiary's knowledge or intent cannot be imputed to its parent to show willful infringement;[1] (iii) the accused product cannot be a "copy" of the patented invention because it launched prior to the filing of the '234 patent, and any copying would not be imputable to Agilent; (iv) any evidence of pre-acquisition inducement by Agilent would be reflected in Agilent's documents, not ProZyme's; (v) valuation of the accused product in this case pertains to Agilent, not ProZyme, and is shown through Agilent's documents, not ProZyme's from before the acquisition; and (vi) any evidence of a reasonable royalty goes back to the date when the *defendant's* infringement begins, not any infringement at all.

Waters also fails to articulate the relevance of this discovery in discussing examples of disputed RFPs. For example, in RFP 9, Waters does not explain why ProZyme documents regarding manufacturing are relevant in this case against Agilent, where Agilent has agreed to produce post-acquisition manufacturing documents. The same blatant failure exists regarding the exceedingly broad RFP 12, which calls for "All marketing material relating to InstantPC," and for which Waters does not articulate any need in this case for ProZyme documents pre-dating the acquisition. With RFP 8, Waters attempts to take discovery back even further, not just before Agilent's acquisition of ProZyme, but before the application for the '234 patent was even filed. Waters states no logic or authority for doing so, but merely discusses *Parallel Networks*, a case that even Waters admits did not grant the relief it seeks. *See* D.I. 80 at 8 (noting that *Parallel Networks*, 2015 WL 4966957 at *2, related to discovery of *pre-issuance* documents, not pre-application documents, which is what Waters requests here). Waters does not even attempt to draw a connection between the requested pre-application information and any claim or defense in this case.

**III. Discovery Should Not be Permitted Regarding Unaccused "Instruments."**

Waters presents no legal or factual basis for its requests for discovery regarding "instruments" that are not accused products in this case based on a convoyed sales theory. Waters does not even begin to satisfy the threshold requirement for a convoyed sales theory: the identification of a functional unit constituted by the accused product together with an unaccused product. *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). Indeed, even after months of opportunity to articulate a theory of convoyed sales, Waters offers nothing in its letter. Waters instead points only to its preliminary injunction argument and damages model, which are also devoid of any showing of a functional unit formed by InstantPC™ and any Agilent instrument, such as a mass spectrometry device. Those instruments fully function in a variety of ways that have nothing to do with InstantPC™. The converse is also true:

---

[1] *TI Grp. Auto. Sys., (N. Am.), Inc. v. VDO N. Am. L.L.C.*, C.A. No. 00-432-GMS, 2002 WL 484838, at *3 (D. Del. Mar. 7, 2002) (refusing to impute subsidiary's knowledge onto its parent).

RLF1 21481220v.1

InstantPC™ functions independently of Agilent instruments, *including on Waters devices*. Without a functional unit, there are no convoyed sales. *See Immersion Corp.*, 2015 WL 834209, at *4 (D. Del. Feb. 24, 2015) ("If they can function independently, patented and unpatented products do not constitute a functional unit."); *Am. Seating*, 514 F.3d at 1268-69 ("no basis" for convoyed sales even where unpatented and patented products were "usually but not always" sold together for convenience and for "one-stop shopping" but there was no "absolute requirement that the two items function together"); *Teles AG Informationstechnologien v. Quintum Techs., LLC*, C.A. No. 06-197-SLR-LPS, 2009 WL 3648458, at *3 (D. Del. Oct. 30, 2009) ("causal link between a 'convoyed sale' and the commercial success of the accused functionality" was "too strained to justify the requested discovery"); *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375–76 (Fed. Cir. 2015), *cert. granted, judgment vacated sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893, 193 L. Ed. 2d 785 (2016), and *opinion reinstated in part,* 824 F.3d 1344 (Fed. Cir. 2016) (no convoyed sales damages where plaintiff failed to present evidence that its product had no independent function, or that it would not work as well in manners not involving the patented technologies). Waters also fails to show another requirement for a convoyed sales theory: that the accused product generates demand for the unaccused product. This failure is an independent ground for rejecting a convoyed sales theory, regardless of whether there is a functional unit. *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 491 (D. Del. 2019) (no damages for convoyed sales even for products with a functional relationship because the patented product did not drive customer demand). The notion that any customer would buy Agilent's mass spectrometer equipment for the sole purpose of using the InstantPC™ product line ignores reality; Agilent's mass spectrometer equipment can run hundreds of different types of reagents and a boundless variety of samples, without using the InstantPC™ reagent. Because Waters fails to articulate a theory that meets the legal requirements for convoyed sales, this burdensome and irrelevant discovery on unaccused "instruments" should be denied.[2]

Respectfully submitted,

*/s/ Chad M. Shandler*
Chad M. Shandler (#3796)

---

[2] Waters' failure to articulate a theory meeting the legal standard for convoyed sales means it should be denied this discovery even under Waters' own citations. *See Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 278 (D. Del. 2012) ("requested information is not relevant . . . if the inquiry is based on the party's mere suspicion or speculation.") (citations omitted). *See also Thought, Inc. v. Oracle Corporation et al*, Case No. 312-cv-05601-WHO (N.D. Cal) (ECF No. 143) (affirming denial of plaintiff's motion to compel as seeking documents irrelevant to derivative or convoyed sales and reasonable royalty); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("A bare allegation of wrongdoing . . . is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case. The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery,* not to find out if it has any basis for a claim.") (citations omitted); *Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp.2d 654, 663 (D. Del. 2008) (discovery based on "bare allegations" would constitute a fishing expedition).