IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WATERS CORPORATION AND WATERS TECHNOLOGIES CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> AGILENT TECHNOLOGIES INC., <br><br> Defendant. | ) ) ) ) ) ) ) C.A. No. 18-1450-MN ) ) ) ) |

### DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '234 PATENT

OF COUNSEL:

Anne Elise Herold Li
James K. Stronski
Robert B. Kornweiss
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

Chiemi Suzuki
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
(213) 622-4750

Karla I. Arias
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202)624-2500


Dated: October 28, 2019

Chad M. Shandler (#3796)
Travis S. Hunter (#5350)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Shandler@rlf.com
Hunter@rlf.com
Ewing@rlf.com

*Attorneys for Defendant Agilent Technologies Inc.*

RLF1 22288293v.1

Dear Judge Noreika:

Pursuant to Paragraph 15(c) of the March 14, 2019 Scheduling Order, Defendant Agilent Technologies, Inc. ("Agilent") respectfully seeks leave to file a Motion for Summary Judgment of Invalidity of all claims in the patent in suit, U.S. Patent No. 9,658,234 ("'234 Patent," attached as Exhibit A). "The doctrine of nonstatutory double patenting [] seeks to prevent the possibility of multiple suits against an accused infringer by different assignees of patents claiming patentably indistinct variations of the same invention." MPEP § 804 (citing *In re Van Ornum*, 686 F.2d 937, 944-48 (CCPA 1982)). A claim is "not patentably distinct from an earlier claim if the later claim is obvious over, or anticipated by, the earlier claim." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2009). Agilent's proposed motion will show that all fifteen claims of the later '234 Patent assigned to Waters Technology Corp. ("Waters Patent") are invalid for obviousness-type double patenting in view of the claims of the grandparent patent, U.S. Patent No. 7,148,069 ("'069 Patent," attached as Exhibit B) and the parent patent, U.S. Patent No. 9,274,123 ("'123 Patent," attached as Exhibit C), each assigned to Ajinomoto Co., Inc. (collectively, "Ajinomoto Patents"). At this point in the case, it is now clear that Agilent's challenge applies independent of any disputed claim construction.

The '234 Patent has three categories of claims: "carbamate compound" claims 1-5, "method for analyzing" claims 6-14, and a "method for labelling" claim 15. Claims 1-10 and 15 are each anticipated by the earlier Ajinomoto Patent claims. This anticipated set of '234 Patent claims includes all of the compound claims, the only "labelling" claim, and the broadest "analyzing" claims of the '234 Patent. If only these claims are found to be invalid, the case will be simplified greatly. The remaining claims 11-14 are obvious in view of the earlier Ajinomoto Patent claims and the state of the admitted prior art as described in the patents' shared specification. Claims 11-14 are a subset of dependent "analyzing" claims that are each obvious because the added limitations are amply taught in the specification of those earlier patents and are no more than a routine application of the methods claimed by the earlier patents. If permitted and granted in full, Agilent's motion for summary judgment would be case dispositive.

I. **Agilent's Motion Will Show that Waters' Patent Claims 1-10 and 15 are Anticipated by and Not Patentably Distinct Over the Ajinomoto Patent Claims**

The doctrine of obviousness-type double patenting requires that a patent is invalid if the claims in the patent "are not patentably distinct from the claims" of an earlier patent. *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985). As a representative example of the argument Agilent intends to raise if granted leave to file early summary judgment, Agilent provides an example below for compound claim 1—the only independent claim of the '234 Patent. Agilent submits that the only difference between the "carbamate" claim 1 of the '234 Patent and claim 14 of the Ajinomoto '069 Patent is the "substituent" limitation highlighted in yellow in the color-coded chart, and that claim 1 encompasses the subject matter of corresponding claim 14, regardless of the parties' competing claim constructions.

The '234 Patent claims share a similar structure with the earlier Ajinomoto Patents claim sets. Agilent's motion would explain why the claims of the earlier Ajinomoto Patents anticipate claims 2-10 and 15 of the '234 Patent in a similar way to the representative claim 1 example below.

| Claim of Waters '234 Patent | Claim of Ajinomoto '069 Patent |
|---|---|
| 1. A carbamate compound represented by formula (1): <br><br> [structure of Ar-NH-C(=O)-O-N(succinimide), labeled (1)] <br><br> wherein Ar is an aromatic carbocyclic group or an aromatic heterocyclic group residue, wherein said aromatic carbocyclic group or said aromatic heterocyclic group residue has a substituent, and <br><br> wherein, in the bond between Ar and the nitrogen atom of the carbamate group, a carbon atom within the ring of Ar is bound to the nitrogen atom of the carbamate group, whereby said carbamate compound may be in a form of a salt, and <br><br> wherein said substituent contains a sulfonic acid group, a phosphoric acid group, a guanidyl group, a dialkylamino group or a trialkyl ammonium group. | 14. A carbamate compound represented by formula (1) <br><br> [structure of Ar-NH-C(=O)-O-N(succinimide), labeled (1)] <br><br> wherein Ar bound to a nitrogen atom of a carbamate group is a carbocyclic compound or heterocyclic compound residue having an aromaticity where a polar substituent is bound to the ring, or <br><br> a pyridyl group or a pyrazyl group where a polar substituent is not bound to the ring, and <br><br> wherein in the bond between the Ar group and a nitrogen atom in the carbamate group, a carbon atom within the ring in the Ar group is bound to a nitrogen atom of the carbamate group, whereby the carbamate compound may be in a form of a salt, and <br><br> wherein said polar substituent is selected from the group consisting of sulfonic acid group, guanidyl group, phosphoric acid group, dialkylamino group and trialkylammonium group. |

## II. Agilent's Motion Will Show That Waters's Patent Claims 11-14 Are Obvious and Not Patentably Distinct Over the Ajinomoto Patent Claims

Claims 11-14 of the '234 Patent are invalid for obviousness-type double patenting over at least claims 1-14 of the '123 Patent and/or at least claims 17-20 of the '069 Patent. Dependent claims 11-14 would be anticipated by the Ajinomoto claims but for the addition of narrowing limitations that precede performance of the claimed mass spectrometry (MS) method. For example, claim 11 of the '234 Patent specifies that "said labeled compound is separated" before being subjected to the MS method; claim 12 specifies that the separation occurs by liquid chromatography (LC); and claim 13 specifies that LC separation is carried out "by reversed phase column." '234 Patent, 30:28-36. Claim 14 specifies a 10- to 1000-fold mole excess of the compound of formula (1) for labelling. *Id*. at 30:37-39. These additional elements do not render claims 11-14 patentably distinct because "all the claimed elements were known in the prior art and one skilled in the art could have combined the elements as claimed by known methods with

2

no change in their respective functions, and the combination yielded nothing more than predictable results to one of ordinary skill in the art." MPEP § 2143 (citing, *inter alia*, *KSR*).

The Ajinomoto Patents and Waters Patent each disclose that amino acids labeled with carbamate compounds were routinely subjected to LC separation techniques as further detailed in admitted prior art. *See, e.g.*, '069 Patent, 2:16-21 (citing Iwaki *et al.*); 8:62-9:4 (citing '599 Patent); and 6:16-18 (incorporating prior art references into specification). Further, as demonstrated by both the same incorporated prior art and Ajinomoto Patents, reversed phase columns were routinely used in these LC separation techniques. *See* '123 Patent, 21:62-24:58; '069 Patent, 22:60-25:58.

While the '123 and '069 Patents taught adding a 10- to 1000-fold molar excess of the carbamate compounds of formula (1) when labeling a "compound with amino group" (*See* '123 Patent, 9:43-50; '069 Patent, 10:1-9), the shared specification of the Ajinomoto and Waters Patents further teach that "there is no difficulty" in labelling targets with the claimed compounds and that "a general condition in the case of labeling using such a reagent … may be used." *See* '234 Patent, 9:54-63 (further citing Iwaki reference for a suitable labelling protocol). While the shared specifications provide a wide range of ratios for labelling, there is no indication of novelty, or unexpected results, due to use of conditions within the wide range. This wide range of a molar excess is at most a product of routine experimentation. *In re Aller*, 220 F.2d 454, 456 (CCPA 1955) ("where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation"). Thus, claims 11-14 of the '234 Patent are invalid for obviousness-type double patenting over at least claims 1-14 of the '123 Patent and/or at least claims 17-20 of the '069 Patent.

### III. Early Summary Judgment Is Appropriate to Resolve or Greatly Narrow this Litigation.

Obviousness-type double patenting is a compelling invalidity ground here because the earlier patents are in the same family with the same specifications and they claim the same compounds and methods. It now appears that the prior claims of the Ajinomoto Patents were amended to add the "substituent contains" language in an attempt to broaden the claims for improved assertion against an extant InstantPC product. Whether the claims were, in fact, broadened depends on the Court's construction. But, under either parties' construction, the claims of the earlier patents necessarily overlap with the claims of the '234 Patent. The doctrine of obviousness-type double patenting applied no later than August 7, 2018 (before this lawsuit), when Ajinomoto assigned the '234 Patent to Waters while retaining ownership of the earlier Ajinomoto Patents. *See Van Ornum*, 686 F.2d 944-48.

Agilent's discrete motion for summary judgment at this time would make sense as a matter of case management. The parties have not begun to take depositions. This motion, if allowed and granted on the allegedly anticipated claims, would greatly simplify this case and focus any remaining issues of infringement and validity on four dependent method claims. If permitted and granted on all claims, the case would be resolved, saving both the parties and the Court substantial resources.

                                                        Respectfully submitted,

                                                        */s/ Chad M. Shandler*

                                                        Chad M. Shandler (#3796)

cc: All Counsel of Record (by CM/ECF)

RLF1 22288293v.1