01:12:40

```
                  IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF DELAWARE


   WATERS CORPORATION, et al.,    )
                                  )
              Plaintiffs,         )
                                  ) C.A. No. 18-1450(MN)
   v.                             )
                                  )
   AGILENT TECHNOLOGIES, INC.,    )
                                  )
              Defendant.          )


                       Monday, December 9, 2019
                       10:00 a.m.
                       Teleconference


                       844 King Street
                       Wilmington, Delaware



   BEFORE:   THE HONORABLE MARYELLEN NOREIKA
             United States District Court Judge




   APPEARANCES:


                  YOUNG CONAWAY STARGATT & TAYLOR
                  BY:  KAREN PASQUALE, ESQ.

                  -and-

                  ARNOLD & PORTER KAYE SCHOLER, LLP
                  BY:  JEFFREY A. MILLER, ESQ.
                  BY:  VICTORIA L. REINES, ESQ.


                            Counsel for the Plaintiffs
```

1   APPEARANCES CONTINUED:

2

3

            RICHARDS LAYTON & FINGER, PA
4           BY:  CHAD MICHAEL SHANDLER, ESQ.
            BY:  ALEXANDRA M. EWING, ESQ.
5
            -and-
6
            CROWELL & MORING, LLP
7           BY:  ROBERT B. KORNWEISS, ESQ.
            BY:  JAMES K. STRONSKI, ESQ.
8
                    Counsel for the Defendant
9

10

11                       - oOo -

12                P R O C E E D I N G S

13           (REPORTER'S NOTE:  The following telephone

14   conference was held in chambers, beginning at 10:00 a.m.)

15

10:00:23  16

10:02:31  17           THE COURT:  Good morning, counsel.  Who is

10:02:34  18   there, please?

10:02:37  19           MS. PASCALE:  Good morning, Your Honor.  This is

10:02:39  20   Karen Pascale from Young, Conaway for Waters.  And joining

10:02:42  21   me on the line are Jeffrey Miller and Victoria Reines from

10:02:47  22   Arnold & Porter.

10:02:50  23           THE COURT:  Welcome.

10:02:50  24           For defendant.

10:02:51  25           MR. SHANDLER:  Yes, good morning.  Your Honor,

```
10:02:53  1   it's Chad Shandler and Ally Ewing from Richards Layton for
10:02:57  2   the defendant, Agilent Technologies.  We are joined this
10:03:01  3   morning by James Stronski and Robert Kornweiss from Crowell
10:03:07  4   & Moring.  And also on the line is John Love from Agilent.
10:03:10  5              THE COURT:  Okay.  Welcome to all of you.
10:03:12  6              So I have reviewed all of the documents that
10:03:15  7   were submitted, the joint status report and the supplement.
10:03:21  8   And I guess my question for Agilent is there are a number of
10:03:32  9   things that were listed that plaintiff provided.  What in
10:03:38 10   addition to that is necessary?  And I need more specificity
10:03:43 11   than just every document related to a topic.  What is it
10:03:47 12   that you need?
10:03:49 13              MR. KORNWEISS:  Your Honor, this is Robert
10:03:52 14   Kornweiss on behalf of Agilent.  I think this can be broken
10:03:58 15   down into two major categories.  The first is we received
10:04:02 16   fifteen pages of lab notebooks, and we did a calculation
10:04:07 17   authenticating those so that they could be used and as of
10:04:10 18   now we have not received that declaration.
10:04:12 19              THE COURT:  Let me ask Waters, are you really
10:04:14 20   going to -- if Ajinomoto is not cooperating are you going to
10:04:23 21   raise an objection on the authenticity of those documents?
10:04:26 22              MR. MILLER:  Your Honor, this is Jeffrey Miller.
10:04:28 23   We would not object.
10:04:29 24              THE COURT:  So you're going to get your
10:04:31 25   stipulation, there is not going to be an objection on
```

```
10:04:34   1    authenticity of those.  What's next?
10:04:37   2              MR. KORNWEISS:  The second category relates to
10:04:40   3    the amended pleading that was recently filed alleging
10:04:44   4    inequitable conduct in the prosecution of a patent-in-suit.
10:04:48   5    And the relevant discovery on the counterclaims would be
10:04:54   6    from the named inventors, and anyone else involved in the
10:04:58   7    prosecution of the patent, specifically two subcategories
10:05:04   8    would be the prior art reference, Tyashi, which is
10:05:10   9    anticipatory prior art for many of the claims of the
10:05:14  10    patent-in-suit, and so we would request discovery from the
10:05:19  11    named inventors and others involved in prosecution as to
10:05:22  12    their knowledge of that prior art, and whether it was
10:05:25  13    provided to counsel and the reasons it was dealt with, that
10:05:30  14    it was not disclosed to the USPTO in prosecution.
10:05:34  15              And the second subcategory here would be
10:05:39  16    similarly why the prosecution history of the Japanese
10:05:45  17    counterpart patent was not provided to the USPTO either
10:05:51  18    despite the fact that claims from that prosecution similar
10:05:54  19    to claims here were canceled in light of the Tyashi prior
10:05:59  20    art.
10:06:00  21              THE COURT:  Okay.  And so that was helpful to
10:06:09  22    me.  Waters, what's your position on that?
10:06:15  23              MR. MILLER:  Go ahead, Victoria.
10:06:20  24              THE COURT:  That's okay, Jeff, you go ahead.
10:06:24  25              MR. MILLER:  Victoria and I are not in the same
```

```
10:06:28   1    room so it's difficult to coordinate.  Our position is,
10:06:31   2    first of all, with respect to prosecution of the U.S.
10:06:35   3    application, the law firm that prosecuted that application,
10:06:38   4    on Oblon, McClelland, they are within the subpoena power of
10:06:44   5    a United States court, and certainly discovery could be
10:06:48   6    taken of them.  With respect to whatever happened in Japan,
10:06:57   7    I'm not really sure what more we can do.  We have asked
10:07:02   8    Ajinomoto to reconsider its position.  It looks to us based
10:07:06   9    on the letter we got from Ajinomoto's lawyer on Friday they
10:07:13  10    had attempted to engage with Agilent's counsel and for
10:07:16  11    whatever reason that didn't go anywhere, so I'm not really
10:07:19  12    sure what more we can do.
10:07:27  13              THE COURT:  Okay.
10:07:28  14              MR. KORNWEISS:  And I should preface it by
10:07:30  15    saying that we're not responding to the specific factual
10:07:35  16    allegations about the claim, time will come for that.
10:07:39  17              THE COURT:  Right.  I guess my question is if
10:07:43  18    Ajinomoto doesn't cooperate, how are you going to get
10:07:46  19    information that responds or defends against the issues of
10:07:49  20    inequitable conduct?  I mean, I assume you're not going to
10:07:53  21    go to Ajinomoto and get information, right, so I just want
10:07:59  22    to make sure everyone is on the same playing field.  These
10:08:02  23    allegations are going forward, and they can get some
10:08:05  24    information from Oblon McClelland to the extent the law firm
10:08:10  25    will give it, but if Ajinomoto won't cooperate and these
```

10:08:14  1   allegations go forward, they're not coming in voluntarily to
10:08:18  2   defend against them.  Right?
10:08:20  3             MR. MILLER:  This is Mr. Miller.  I think that
10:08:22  4   the parties are similarly situated.  We can't force
10:08:27  5   Ajinomoto to do anything more than they're willing to do.
10:08:31  6             THE COURT:  You can't go and get voluntary
10:08:34  7   cooperation from them after this.  If Agilent comes in and
10:08:39  8   says hey, there is all this stuff that suggests inequitable
10:08:43  9   conduct, you're not going to go to Ajinomoto and get
10:08:48 10   voluntary cooperation for them to come in and defend
10:08:51 11   themselves.  Right?
10:08:52 12             MR. MILLER:  I'll never say never, but I'm not
10:08:55 13   sure how we would do anything more than we have already
10:08:59 14   tried.
10:09:01 15             THE COURT:  Okay.  So Agilent, what is it that
10:09:05 16   you want me to do because I'm not sure -- it doesn't seem
10:09:10 17   like Ajinomoto is going to give you anything on these issues
10:09:14 18   that you're asking for, so what is it that you want me to
10:09:17 19   do?
10:09:18 20             MR. KORNWEISS:  Your Honor, we agree and
10:09:19 21   Ajinomoto seems to be expressing that they'll do everything
10:09:24 22   they can to avoid discovery, whether there is the U.S.
10:09:28 23   proceeding or Waters rogatory, according to the case law in
10:09:33 24   similar cases where the assignee fails to obtain relevant
10:09:38 25   discovery from assigner, the court in those cases stated

```
10:09:42   1   they would obtain motions under Rule 37 whether it is
10:09:46   2   striking a pleading, striking a claim or ordering an adverse
10:09:50   3   inference, there are a variety of sanctions that are
10:09:53   4   available to Your Honor under Rule 37, so we would a request
10:09:57   5   additional briefing as to the appropriate sanctions here.
10:10:01   6                   THE COURT:  That seems reasonable.
10:10:02   7                   Waters, what's your position?
10:10:05   8                   MR. MILLER:  We're happy to brief whatever the
10:10:09   9   Court would like briefed.  I would add that the cases that
10:10:13  10   they cited in their last round of briefing didn't have
10:10:17  11   anything close to adverse inferences or anything like that.
10:10:21  12   They may have new cases that they can cite, but we haven't
10:10:25  13   seen anything that's similar to the situation we're in here
10:10:29  14   that they have provided to us.
10:10:32  15                   THE COURT:  I'm going to allow the briefing to
10:10:34  16   go forward on sanctions for whatever purpose, and I will say
10:10:39  17   that Ajinomoto to the extent that they do not agree to
10:10:45  18   provide voluntary discovery on the inequitable conduct
10:10:53  19   issue, if those issues go forward in the case, or to trial,
10:11:02  20   they'll not be permitted to come in and voluntarily enter an
10:11:07  21   appearance or defend against them.  This is their chance.
10:11:13  22   If they think there is a defense, they need to come in now
10:11:19  23   because they can't come in later.
10:11:21  24                   MR. MILLER:  Understood, Your Honor.  And we
10:11:23  25   will let them know.
```

10:11:24  1                THE COURT:  Okay.  And not only that, I'm not
10:11:27  2    going to let Waters come in and sort of backdoor that by
10:11:31  3    having discussions with the folks at Ajinomoto on the
10:11:35  4    issues.  Ajinomoto has to make a choice, and they can make
10:11:40  5    that choice, but it may result in an adverse inference and
10:11:45  6    it certainly will result in them not being able to change
10:11:48  7    their mind later.
10:11:50  8                So anything else that we can do today?
10:11:57  9                MR. MILLER:  Not from Waters' perspective, Your
10:11:59 10    Honor.
10:11:59 11                THE COURT:  Agilent?
10:12:01 12                MR. Kornweiss:  Your Honor, would you like to
10:12:03 13    address the schedule for the briefing of the sanctions
10:12:06 14    issue?
10:12:06 15                THE COURT:  Why don't you guys try and work that
10:12:08 16    out, and, get it in as soon as possible, but I do recognize
10:12:13 17    the holidays are coming up, so whatever, just try and come
10:12:16 18    up with an agreement on that.
10:12:20 19                MR. KORNWEISS:  Thank you, Your Honor.  Nothing
10:12:22 20    further from Agilent.
10:12:24 21                THE COURT:  Thanks very much.
10:12:24 22                MR. MILLER:  Thank you Your Honor.
         23                I hereby certify the foregoing is a true
               and accurate transcript from my stenographic notes in the
         24    proceeding.
         25                                /s/ Dale C. Hawkins
                                           Official Court Reporter